*Exhibit 1*

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| IREDELL COUNTY  2024 MAY 15 P 12 52 | SUPERIOR COURT DIVISION |
| | Case No: 24 CVS 1460 |

KURT BUSCH,

    Plaintiff,

v.

LLOYD'S UNDERWRITER SYNDICATE NO. 4444 CNP A12055BAA, LLOYD'S UNDERWRITER SYNDICATE NO. AXS 1686 3410716121PA, LLOYD'S UNDERWRITER SYNDICATE NO. HAM 4000 Zl167E21A000, and ENDURANCE WORLDWIDE INSURANCE LTD E9105 LAH303521001 a/k/a ENDURANCE WORLDWIDE INSURANCE LTD LIRMA E9105 LAH303521001,

    Defendants.

**COMPLAINT**

Plaintiff Kurt Busch ("Plaintiff" or "Busch"), by his undersigned attorneys, in the above-captioned civil action and complaining of all captioned defendants, alleges and says as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Kurt Busch is an adult citizen and resident of Iredell County, North Carolina, and brings this action in his own name and on his own account.

2. Lloyd's London ("Lloyd's") is an insurance marketplace incorporated by the Lloyd's Act 1871 that is operated and overseen by the Corporation of Lloyd's.

3. The sale of insurance through the Lloyd's marketplace is facilitated by its participants which include members, syndicates, and managing agents.

4. Lloyd's members join together to form syndicates which provide capital for underwriting risk through the issuance of insurance contracts, more commonly referred to as insurance policies.

5. Lloyd's members appoint managing agents to carry out insurance underwriting, claims handling, and all the usual activities of an insurance company on behalf of the syndicates.

6. Lloyd's managing agents have authority to bind syndicate members to insurance policies.

7. This action arises out of a disability income insurance policy issued to Plaintiff through the Lloyd's marketplace and assigned UMR Policy No. B0621FKUBU000122 (hereinafter, the "Policy.")

8. The Policy was underwritten by the following Lloyd's syndicates (hereinafter referred to collectively as the "Defendants"):

   A. Lloyd's Underwriter Syndicate No. 4444 CNP A12055BAA;

   B. Lloyd's Underwriter Syndicate No. AXS 1686 3410716121PA;

   C. Lloyd's Underwriter Syndicate No. HAM 4000 Zl167E21A000; and

   D. Endurance Worldwide Insurance Ltd E9105 LAH303521001 a/k/a Endurance Worldwide Insurance Ltd LIRMA E9105 LAH303521001.

9. The Defendants hold 100% of the risk insured under the Policy.

10. This Court has personal jurisdiction under N.C.G.S. § 1-75.4(10) because it arises out of a contract of insurance as defined in N.C.G.S. § 58-1-10 that was made between the Plaintiff and the Defendants issued in North Carolina, and while Plaintiff was a resident of Iredell County, North Carolina, and all the Defendants transact substantial business in the State of North Carolina. Furthermore, the harm caused by Defendants' conduct complained of herein occurred in North Carolina.

11.     This Court has subject matter jurisdiction because the amount in controversy exceeds $25,000 exclusive of interest, costs and attorney fees.

12.     Venue is appropriate in this Court under N.C.G.S. § 1-82 because the Plaintiff resides in Iredell County, North Carolina.

## GENERAL ALLEGATIONS

13.     The Policy provides disability income insurance as defined under N.C.G.S. § 58-51-130(a)(1) and is otherwise governed by the North Carolina Insurance Law, N.C.G.S. § 58-1-1, *et seq.*

14.     The Policy requires Defendants to make benefit payments to Plaintiff if he becomes disabled from his normal occupation as a NASCAR Cup Series Driver (formerly, NASCAR Sprint Cup Series) during the period of January 26, 2022 to January 26, 2023.

15.     The Policy is governed by and construed in accordance with the laws of the North Carolina.

16.     The Policy states, *in relevant part:*

This Policy provides cover in respect of the **Benefits** which have an amount inserted against them...

| | |
|---|---|
| **Temporary Total Disablement** as a result of **Accidental Bodily Injury** during such disablement but not beyond 12 months from the date on which the **Insured Person** first became disabled | USD 325,000 per month |

\*\*\*

**OUR INSURANCE CONTRACT WITH YOU**

This **Policy** is a contract between **You** and **Us**...

\*\*\*

**Temporary Total Disablement** - disablement arising from **Accidental Bodily Injury** or **Sickness**, which is medically determined to entirely prevent the **Insured Person** from **Participating** in his **Occupation**.

\*\*\*

**COVER**

\*\*\*

Subject to the terms conditions and exclusions of this **Policy**, **We** will pay the **Beneficiary** the **Benefits** listed on the **Schedule**:

\*\*\*

In the event that the **Insured Person** sustains **Temporary Total Disablement**
- which occurs during the **Period of Insurance** as a result of **Accidental Bodily Injury** or Sickness.
- which continues without interruption beyond the **Temporary Total Disablement Excess**

\*\*\*

Payment of the **Temporary Total Disablement Benefit** will cease when:
- the **Insured** Person has made a recovery from **Temporary Total Disablement**; or
- the Total Maximum **Benefit** Period is exhausted, or the Aggregate Maximum Limit of Insurance is exhausted; or
- the **Insured Person** dies or is deemed to be **Permanently Totally Disabled** by **Us**.

whichever first occurs **or the Insured Person dies**

\*\*\*

(a) It is agreed that the Assured may serve process upon any senior partner in the firm of:

John Dearie at Locke Lord LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York
NY 10281-2101

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

(b) The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

17. While the Policy was in full force and effect, on July 23, 2022 the Plaintiff suffered Temporary Total Disablement from Accidental Bodily Injury as defined under the Policy.

18. The Accidental Bodily Injury was medically determined to entirely prevent the Plaintiff from Participating in his Occupation as provided under the Policy.

19. The Plaintiff timely and properly submitted a claim to the Defendants for Temporary Total Disablement benefits and otherwise complied with all conditions of coverage under the Policy.

20. The Defendants were obligated under the Policy to pay the Plaintiff Three-Hundred and Twenty-Five Thousand Dollars 00/100 ($325,000.00) each month during his disablement but not beyond twelve months.

21. Plaintiff's Temporary Total Disablement continued from July 23, 2022 without interruption during the full Temporary Total Disablement Excess period and for an additional twelve months and beyond.

22. There are no Policy exclusions applicable to the Plaintiff's claim.

23. The Defendants made partial benefit payments to the Plaintiff under the Policy, but ceased making payments before the Plaintiff's Temporary Total Disablement ended and before the twelve-month payment period elapsed.

24. The Defendants owe the Plaintiff TWO MILLION AND SIX HUNDRED THOUSAND DOLLARS 00/100 ($2,600,000) in Temporary Total Disablement benefits under the Policy, plus interest from the date of each payment that Defendants failed and refused to timely and properly make as required by the Policy.

## COUNT I - BREACH OF CONTRACT

25. The Plaintiff re-alleges and incorporates the above paragraphs 1 through 24.

26. The Policy is a valid and enforceable contract between the Plaintiff and the Defendants, and is supported by valid and adequate consideration.

27. The Plaintiff paid valuable consideration in exchange for the Defendants' promise to make benefit payments under the Policy.

28. The Policy obligated the Defendants to make twelve payments of $325,000 to the Plaintiff during his disablement.

29. The Defendants failed and refused to make all benefit payments owed to Plaintiff under the Policy.

30. The Defendants materially breached their payment obligations under the Policy.

31. The Plaintiff satisfied all conditions of coverage under the Policy.

32. The Defendants' material breaches of the Policy caused the Plaintiff to suffer damages in the amount of TWO MILLION AND SIX HUNDRED THOUSAND DOLLARS 00/100 ($2,600,000), exclusive of interest, costs, and attorney fees.

33. In addition to the unpaid Policy benefits, the Defendants are liable to the Plaintiff for all damages that were the natural and probable result of the Defendants' breach of the Policy.

34. The Policy is a contract that is personal in nature and the Defendants knew or should have known that breach of their payment obligations would result in extra-contractual damages.

35. The Defendants are therefore liable to the Plaintiff for all damages resulting from the breach of a contract that is personal in nature, including but not limited to compensatory and extra-contractual damages.

## COUNT II - UNFAIR AND DECEPTIVE ACTS OR PRACTICES
## (TREBLE DAMAGES AND REASONABLE ATTORNEY FEE)

36. The Plaintiff re-alleges and incorporates the above paragraphs 1 through 35.

37. On January 23, 2024 the Defendants sent a letter to the Plaintiff denying Temporary Total Disablement benefits after October 5, 2022 (the "denial letter.")

38. In the denial letter, the Defendants alleged that an overpayment of benefits was made to the Plaintiff and that it reserved its right to seek recoupment from him.

39. The Policy does not provide the Defendants a right to recoup overpayment of Temporary Total Disablement benefits from the Plaintiff.

40. The Defendants' reference to recoupment of past benefit payments in the denial letter was a veiled threat made to intimidate and coerce the Plaintiff from pursuing additional benefits he is lawfully owed under the Policy.

41. The above-described conduct constitutes Unfair Claim Settlement Practices under N.C.G.S. § 58-63-15(11), *inter alia*, as follows:

   A. Defendants misrepresented pertinent facts or insurance policy provisions relating to coverage at issue in violation of *subsection a*.

   B. Defendants did not attempt in good faith to effectuate prompt, fair and equitable settlements of a claim in which liability has become reasonably clear in violation of *subsection f*.

   C. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement in violation of *subsection n*.

42. The Plaintiff claimed benefits under the Policy after his treating physiatrist determined him to be entirely prevented from participating in his occupation as a result of his injury.

43. The Defendants paid Temporary Total Disablement benefits to the Plaintiff based on the opinion of his treating physiatrist.

44. The Defendants did not seek the opinion of an independent physiatrist before terminating benefit payments to the Plaintiff.

45. When the Defendants terminated the Plaintiff's Temporary Total Disablement benefits, they knew his treating physiatrist continued to opine that he was entirely prevented from participating in his occupation as a result of his injury.

46. In the denial letter, the Defendants represented that an independent medical expert rebutted the opinion of the Plaintiff's treating physiatrist and that benefits were therefore terminated.

47. In the denial letter, the Defendants did not clarify that the independent medical expert who rebutted the opinion of the Plaintiff's treating physiatrist was not a medical doctor specializing in physical medicine and rehabilitation.

48. In the denial letter, the Defendants did not clarify that it terminated benefits without the opinion of an independent expert with the same qualifications and education as the Plaintiff's treating physiatrist.

49. In the denial letter, the Defendants represented that the opinion of a neuropsychologist was sufficient to rebut the opinion of a physiatrist without explaining that a neuropsychologist does not attend medical school, is not a medical doctor, cannot prescribe medication, does not practice physiatry, is not board certified in physiatry or neurology, and is not qualified to diagnose and treat patients in the practice of physiatry.

50. The Plaintiff's treating physiatrist is a member of a neurology and neurosurgery medical practice and works in concert with other medical doctors who specialize in neurology and neurosurgery.

51. In the denial letter, the Defendant did not explain that it relied on the opinion of a neuropsychologist who was not a member of a neurology or neurosurgery medical practice and did not work in concert with medical doctors who specialize in neurology or neurosurgery.

52. The above-described conduct constitutes Unfair Claim Settlement Practices under N.C.G.S. § 58-63-15(11), *inter alia*, as follows:

   A. The Defendants misrepresented pertinent facts or insurance policy provisions relating to coverage at issue in violation of *subsection a*.

   B. The Defendants terminated benefits without conducting a reasonable investigation based on all available information in violation of *subsection d*.

   C. The Defendants did not attempt in good faith to effectuate prompt, fair and equitable settlements of a claim in which liability has become reasonably clear in violation of *subsection f*.

   D. The Defendants failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement in violation of *subsection n*.

53. Conduct that violates N.C.G.S. § 58-63-15(11) constitutes a violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75.1-1 as a matter of law.

54. The Defendants' conduct was in and effecting commerce, amounts to an inequitable assertion of its power or position, offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, violates North Carolina's Unfair and Deceptive Trade Practices Act, and as a result, Defendants are liable to the Plaintiff for all

damages awarded under N.C.G.S. § 75.1-1, *et seq*, including but not limited to treble damages under N.C.G.S. § 75-16 and a reasonable attorney fee under N.C.G.S. § 75-16.1.

### COUNT III – COMMON LAW BAD FAITH

55. The Plaintiff re-alleges and incorporates the above paragraphs 1 – 54.

56. The Defendants recognized that the Plaintiff had a valid claim for Temporary Total Disablement benefits.

57. The Defendants wrongfully terminated benefits without first obtaining the independent opinion of a qualified medical doctor in physiatry.

58. The Policy is a contract with an implied covenant of good faith and fair dealing.

59. The Defendants breached their implied covenant of good faith and fair dealing by improperly terminating benefits and making a veiled threat to intimidate and coerce the Plaintiff from pursuing benefits he is lawfully owed under the Policy.

60. The Defendants breached their implied covenant of good faith and fair dealing by terminating benefits based on the medical opinion of a neuropsychologist and misrepresenting the opinion to be equal to that of a medical doctor in the practice of physiatry.

61. The conduct of the Defendants was aggravating or outrageous and done in bad faith and in total disregard of Plaintiffs' rights and interests, entitling Plaintiff to recover punitive damages pursuant to N.C.G.S. § 1D-1, *et. seq.*

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays the Court for relief as follows:

A. That the Plaintiff have and recover of the Defendants a sum equal to the benefits due under the Policy as well as consequential damages to be proven at trial, plus interest at the legal rate;

B.  That the Plaintiff be awarded treble his contract and compensatory damages and extra expense as provided by N.C.G.S. §§ 75-1.1 and 75-16, or at the Plaintiff's election, contract, compensatory, and punitive damages;

C.  That the Defendants be taxed with interest and the costs of this action, including the Plaintiff's reasonable attorneys' fees as provided by North Carolina law and the North Carolina General Statutes, including but not limited to Chapter 75 thereof;

D.  That all issues of fact be tried by a jury; and

E.  For such other, further and different relief as the Court deems just and proper.

This the 15th day of May, 2024.

**KUTINSKY PC**

/s/ Adam Kutinsky
Adam Kutinsky (P57900)
Attorney for Plaintiff Kurt Busch
370 E Maple Rd. 3rd Fl
Birmingham, MI 48009
(248) 712-1049
adam@kutinsky.com
*Pro Hac Vice Pending*

and

**JAMES, MCELROY & DIEHL**

Adam L. Ross (NC Bar #31766)
Haley M. Lohr (NC Bar # 56141)
525 N. Tryon St. Suite 700
Charlotte, NC 28202
704-372-9870
aross@jmdlaw.com
Counsel for Plaintiff Kurt Busch